ROBINSON vs NAIL.

Opinion Delivered June 12, 1899.

1.  *Ejectment—Judgment in former action of Unlawful Detainer not res. judicata.*

In actions of forcible entry, or unlawful detainer, the question of title not being involved, the judgment in such action cannot be introduced for the purpose of proving a former adjudication or barring a recovery.

2.  *Title to Land in Choctaw Nation—Judicial Notice.*

The Court will take judicial notice of the fact that the title to lands in the Choctaw Nation is in the Nation, and when a plaintiff has been out of possession for more than five years prior to the commencement of his suit, his right of action is barred, under § 4476 Mansf. Dig.

3.  *Evidence of Ownership—Question for Jury.*

One Dr. C. moved into the house in controversy in the year 1882, and lived there until his death in 1891. His widow continued to live in said house until 1896, when she sold same to appellant. There was testimony on behalf of appellee, that Dr. C. agreed to pay him $8.00 per month rent for the house, but that no rent had ever been paid. There is testimony that until his death, Dr. C. had been the family physician of appellee, and that appellee was indebted to him for a large sum. There is testimony on behalf of appellant that about the year 1887 the

appellee gave Dr. C. the premises in payment of indebtedness, he owed Dr. C. The proof does not show a formal transfer of the premises. The proof further shows that after the death of Dr. C., the appellee went to his widow and offered to trade her another place for the one in controversy. Appellant testifies that before the purchase, he went to the appellee and inquired of him whether he owned the premises or not, and the latter replied that he did not know whether he did or not. *Held*, That the trial court erred in refusing to submit to the jury the question as to whether or not the appellant had been in actual exclusive and adverse possession of the premises for more than five years prior to the institutiion of the suit.

*4. Estoppel—What not.*

There was testimony to the fact that appellee prior to the purchase of the premises by appellant, had stated that he, appellee, did not know whether he owned the premises or not. *Held*, That this was not sufficient to estop appellee from claiming the premises as against appellant.

*5. Evidence—Burden of Proof—Erroneous Instruction.*

When the burden of proof is upon plaintiff it is error to instruct the jury to find for the party in whose behalf the evidence preponderates.

Appeal from the United States Court for the Central District.

YANCY LEWIS, Judge.

Action by J. H. Nail against McKee Robinson and another. Judgment for plaintiff. Defendants appeal. Reversed.

This was an action of ejectment brought by the appellee, J. H. Nail, against McKee Robinson and P. H. Rogers, appellants, to recover possession of a certain lot, with the improvements thereon, situated in the town of Caddo, in the Central district of the Indian Territory. The plaintiff in his

complaint alleged that he had purchased the premises and improvements in the year 1881 from one C. McCoy; that, immediately after the purchase, he had rented it to one Dr. Woods, who occupied it as his tenant for a few months, and that he then rented it to one Dr. Covington, who occupied the premises sued for as his tenant until the year 1891, and that after that date the premises had been occupied by his tenant Ibbie Covington, until the year 1896, when he alleged that the defendant McKee Robinson had contrived and conspired with the said Ibbie Covington to dispossess him thereof; and prayed judgment for the possession of the premises, and $100 damages. The defendant McKee Robinson answered, specifically denying the allegations of the plaintiff's complaint, and alleging that he himself was the rightful owner of the premises and improvements sued for; that he had purchased them from Mrs. Ibbie Covington; and alleging that he and his vendor, Mrs. Covington, had been in peaceable, adverse, and uninterrupted possession of the premises sued for, for more than seven years next before the commencement of this action. Trial was had before a jury, and a verdict rendered in favor of the appellee, Joel H. Nail. Motion for a new trial was made and overruled, and an appeal prayed and allowed to this court.

*Ralls Bros.* and *J. L. Rappolee*, for appellants.

*G. A. Pate*, *R. L. Williams*, and *W. L. Richards*, for appellee.

THOMAS, J. 1. The first error assigned by the appellants in their brief is that the trial court erred in excluding the judgment of the same court rendered at its March term, 1896, in an action of unlawful detainer, in which Joel H. Nail was plaintiff, and McKee Robinson and Mrs. Ibbie Covington were defendants, for the possession of these same premises and improvements. Under section 3367 of Mans-

field's Digest, which provides: "Neither the judgment nor anything in this act [forcible entry and unlawful detainer] shall bar or preclude the party injured from bringing his action of trespass or ejectment or other action against the aggressor or party offending,"—we think that the trial court properly excluded this judgment, as it might have been in that case that the plaintiff failed to recover because the relation of landlord and tenant was found not to exist, or, if that relation did exist, that the tenant's term had not expired; and, as in either case the question of title to the premises was not involved, that judgment could not have been introduced for the purpose of proving former adjudication, or barring a recovery in this action of ejectment.

Judgment in unlawful detainer. Not res judicata in ejectment.

2. The second and third errors assigned by counsel for appellant, and preserved by the appellant in his motion for a new trial and bill of exceptions, and alleged in his brief, are that the trial court erred in refusing to instruct the jury as follows: "If you believe from the evidence in the case that the plaintiff has been out of the possession of the premises sued for herein more than five years next before the commencement of this action, you will find for the defendants;" and, "if you believe from the evidence in this case that the defendants. by themselves or through Mrs. Ibbie Covington, have been in possession of the premises, and held them openly and adversely to the plaintiff, for a period of more than seven years, you will find the issues in favor of the defendants." These two requests of the appellant to instruct the jury are evidently based upon the following sections of Mansfields Digest: Section 4471, which provides that "no person or persons, or their heirs, shall have, sue, or maintain any action or suit, either in law or in equity, for any lands, tenements, or hereditaments but within seven years next after his, her or their right to commence, have or maintain such suit shall have come, fallen or accrued." And section 4476, which is as follows: "No

action for the recovery of real property, when the plaintiff does not claim title to the lands, shall be brought or maintained when the plaintiff, or his testator or inestate, has been five years out of possession." In the case of Myers vs Mathis, decided by this court at its June term, 1898, and reported in 2 Ind. Ter. 3, Chief Justice Springer, in delivering the opinion of the court, and in construing section 4476 above, as applicable to the Indian Territory, said: "This provision was put in force in the Indian Territory by the act of congress approved May 2, 1890, and the statute of limitations began to run at that time, and was in force in the Indian Territory more than five years previous to the institution of this suit. * * * This court will take judicial cognizance of the fact that the title to the lands in the Chickasaw Nation is in the nation, and not in the individual citizens thereof; and, although the plaintiffs in this case assert in their petition that they were seised of the premises, yet this court must construe the language as applicable to the conditions which existed in that nation. The court below could not have adjudged the title to the premises to be in the appellants; it could only have adjudged the rights of occupancy to be in them. Hence the appellants were not claiming the title to the lands in question, but were only claiming the right of occupancy to them, which one Indian may have of a part of the public domain of the nation. Having been out of possession for more than five years next preceding the institution of the suit, they could not maintain an action for the possession of the right of occupancy of the premises in question." The same rule would apply in an action to recover the possession of lands and improvements in the Choctaw Nation, and therefore the five year statute of limitations would apply, and if the plaintiff in this case had been out of possession of the premises and improvements sued for, for more than five years next prior to the institution of the suit, his right of action was barred by the

*Title of lands in Choctaw Nation. Judicial Notice.*

(33)

statute of limitations. The testimony in this case discloses that Dr. Covington moved into the ·house and upon the premises sued for in the year 1882, and that he lived thereon continuously, with his family, until the year 1891, when he died; that his widow, Ibbie Covington, continued to live upon said premises from the time of the doctor's death until the year 1896, when she transferred the same by bill of sale to the appellant McKee Robinson. The appellee testified that Dr. Covington took possession of the said premises with the understanding that he would pay him eight dollars per month, but that no rent had ever been paid from the year 1882, up to the time that this action was brought, in the year 1896. The testimony also discloses that, from the year 1882 up to the death of Dr. Covington, Dr. Covington had been the family physician of the appellee, Joel H. Nail, and that for services as such physician Joel H. Nail was indebted to him in a large sum. There is some testimony to the effect that in the year 1887, the appellee, Joel H. Nail, being indebted to Dr. Covington in the sum of about $450, the premises and improvements sued for were accepted by Dr. Covington in payment of this indebtedness. The testimony upon this point, however, is not sufficient for the jury to have found that there was a formal transfer of the premises, and the improvements sued for, from Joel H. Nail to Dr. Covington, but there is proof to show that from the year 1887 Dr. Covington, up to the time of his death, and from that date his widow and heirs, until the bringing of this suit, in the year 1896, had exclusively occupied said premises and improvements, claiming the same as their own, and under a claim of right, and in hostility to any claim of the appellee, Joel H. Nail, and that such adverse possession of Dr. Covington, his widow and heirs, was open and notorious, and was apparently inconsistent with the claim of the appellee that he was the owner of the same. The testimony also discloses that, after the death of Dr. Covington, the

appellee, Joel H. Nail, went to the widow, and offered to trade her another place for the premises in controversy in this suit. The appellant McKee Robinson, who purchased from Mrs. Covington and one of her children, testified that before he purchased he went to the appellee, Joel H. Nail, and inquired of him whether or not he owned the premises, and that he replied that he did not know whether he did or not. This was denied and qualified by the appellee in his testimony. We are of the opinion, therefore, that the trial court erred in refusing the request of the appellants to submit to the jury the question as to whether or not the appellants had been in actual, exclusive, and adverse possession of the premises and improvements sued for, for more than five years prior to the institution of this suit, claiming to own the same, and denying the title of the appellee; and, if they are found under such circumstances that the plaintiff and appellee, Joel H. Nail, had not been in possession of the premises sued for, for more than five years prior to the institution of this suit, they should have been directed to return a verdict for the defendants and appellants. In the case of Ringo vs Woodruff, 43 Ark. 486, the court, in passing upon a similar question, which was involved in that case, said: "What, then, is necessary to constitute that possession? It is well settled by the authorities that this possession must be actual, open, continuous, hostile, exclusive, and be accompanied by an intent to hold adversely, and 'in derogation of,' and not in 'conformity with,' the rights of the true owner, and must continue for the full period prescribed by the statute of limitations. * * * It must be open, in order to give the owner notice of the adverse claim, and force him to protect his rights or lose them by a failure to assert them within the period of time allowed him by the statute to do so. It must be continuous, because when it ceases the seisin of the owner revests, and the statute ceases to run, and any subsequent ouster or disseisin forms the

beginning of a new period of limitation and of a new adverse possession. It must be hostile, in order to show that it is not held in subordination and subserviency to the title of the owner. It must be exclusive, because the owner's possession continues until he is disseised, and there cannot be two actual possessions of the same premises at the same time, and, in case the owner and another are in actual occupation of the same land, the legal possession follows the title. It should be accompanied by the adverse intent, because it is necessary to fix 'the character of the original entry, and determine whether it be an ouster or a mere trespass, or whether the possession be in subordination or hostility to the true owner.' The possession should be continuous and unbroken during the statutory period, so 'as to leave no doubt on the mind of the true owner, not only who the adverse claimant was, but that it was his purpose to keep him out of his land.' " We think that these questions should have been submitted to the jury, because there is testimony in the case from which the jury might have found that the plaintiff and appellee, Joel H. Nail, had been out of possession of the premises sued for, not only for more than five years, but for more than seven years, prior to the institution of the suit, and that during all that time Dr. Covington had continually occupied said premises and improvements, claiming the same as his own, adversely to the claim of the appellee; and we think that there was testimony from which the jury could have found that the appellee knew of the denial of his claim by Mrs. Covington, and her claim to be owner of the premises by virtue of a purchase made by Dr. Covington.

3. The next error assigned by the appellants was the refusal to instruct the jury, as requested by the appellants, that if the plaintiff, "in conversation with McKee Robinson, made such statements or acted in such a manner as to cause a reasonable man to believe that he had aban-

doned such claim as he might have had, or had no claim, to the premises in controversy, and, at the time of such acts or statements, the plaintiff knew, or had reason to believe, that the defendant intended purchasing or trading for the property, then you will find for the defendant." This request of the appellants is apparently based upon the testimony of McKee Robinson, in which he stated, in substance, that, before purchasing the premises and improvements in controversy, he went to the appellee, Joel H. Nail, and asked him if he owned the premises and improvements sued for in this action, and that he replied that he did not know whether he did or not. The testimony of the appellee, Joel H. Nail, upon this point, was a denial of this conversation, he admitting that Robinson had come to him and asked him about the title to the premises; but he said that he told him that he had bought and paid for the premises, and had a bill of sale to them, and, if that gave him the title to the premises, he was the owner. We do not think that this was sufficient testimony on this point for the court to have submitted the question of estoppel by conduct to the jury. Mr. Bigelow, in his work on Estoppel (p. 570), states that the following elements must be present in order to an estoppel by conduct: "(1) There must have been a false resresentation or a concealment of material facts. (2) The representation must have been made with knowledge of the facts. (3) The party to whom it was made must have been ignorant of the truth of the matter. (4) It must have been made with the intention that the other party should act upon it. (5) The other party must have been induced to act upon it." We do not think, even if the jury had believed the testimony of the appellant McKee Robinson, as to this conversation with Joel H. Nail, that there was a false representation or a concealment of material facts, or that it could be said that Nail had made the statement with knowledge of the facts, or that it was the intention of Mr. Nail for McKee Robinson Estoppel.

to act upon this information, or that McKee Robinson did, in fact, act upon it, and the request of the appellant to instruct the jury upon this proposition was properly denied by the trial court.

4.    The last error assigned by the appellants is that the trial court erred in instructing the jury as follows: "You are the judges of the weight of the evidence and the credibility of the witnesses, and you will find for the parties in whose behalf the evidence preponderates, upon the issues submitted to you." As this instruction placed upon the defendants and appellants the burden of proof as to their right to the premises and improvements sued for, it was clearly erroneous. The burden of proof was upon the plaintiff and appellee, Joel H. Nail, and if he had failed to make out his case by a preponderance of testimony, or if the scales had been equally balanced, the defendants were entitled to a verdict. For the reasons stated, the judgment of the lower court is reversed, and the cause is remanded. Reversed and remanded.

SPRINGER, C. J., and CLAYTON and TOWNSEND, JJ., concur.